IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| BILLIE SCHAEFER,<br><br>             Plaintiff,<br><br>vs.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>             Defendant. | CASE NO. 5:22-cv-226<br><br>DISTRICT JUDGE<br>JOHN R. ADAMS<br><br>MAGISTRATE JUDGE<br>JAMES E. GRIMES JR.<br><br>**REPORT &<br>RECOMMENDATION** |

Plaintiff Billie Schaefer filed a Complaint against the Commissioner of Social Security seeking judicial review of the Commissioner's decision denying Supplemental Security Income. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). This matter has been referred to a Magistrate Judge under Local Rule 72.2(b)(1) for the preparation of a Report and Recommendation. Following review, and for the reasons stated below, I recommend that the District Court affirm the Commissioner's decision.

**Procedural history**

In December 2019, Schaefer filed an application for Supplemental Security Income alleging a disability onset date of November 21, 2019,[1] and claiming she was disabled due to "long QT," carpal tunnel, idiopathic

---

[1]    "Once a finding of disability is made, the ALJ must determine the onset date of the disability." *McClanahan v. Comm'r of Soc. Sec.*, 193 F. App'x 422, 425 (6th Cir. 2006).

peripheral neuropathy, mild persistent asthma with acute exacerbation, recurrent bronchitis mucopurulent, allergic urticaria, postural orthostatic tachycardia syndrome, hypermobility arthralgia, Ehler-Danlos syndrome, and chronic obstructive pulmonary disease.[2] Tr. 182, 205. The Social Security Administration denied Schaefer's application and her motion for reconsideration. Tr. 93, 104. Schaefer then requested a hearing before an Administrative Law Judge (ALJ). Tr. 128.

In January 2021, an ALJ held a hearing. Schaefer and a vocational expert testified. Tr. 32-62. In March 2021, the ALJ issued a written decision finding that Schaefer was not disabled. Tr. 15-25. The ALJ's decision became final on December 14, 2021, when the Social Security Appeals Council declined further review. Tr. 1-3; *see* 20 C.F.R. § 404.981.

Schaefer filed this action on February 2, 2022. Doc. 1. She asserts the following assignment of error:

---

[2]     Long QT syndrome is a "heart signaling disorder that can cause fast, chaotic heartbeats." *See* https://www.mayoclinic.org/diseases-conditions/long-qt-syndrome/symptoms-causes/syc-20352518#:~:text=Long%20QT%20syndrome%20(LQTS)%20is,(congenital%20long%20QT%20syndrome) (last visited Oct. 13, 2022). Postural orthostatic tachycardia syndrome is an increased heartbeat when a person transitions from sitting or lying down to standing up, and can cause fatigue, dizziness, and stomach problems. *See* https://my.clevelandclinic.org/health/diseases/16560-postural-orthostatic-tachycardia-syndrome-pots (last visited Oct. 13, 2022). Ehler-Danlos syndrome affects connective tissues and people with this syndrome may have over-flexible joints and stretchy, fragile skin. *See* https://www.mayoclinic.org/diseases-conditions/ehlers-danlos-syndrome/symptoms-causes/syc-20362125 (last visited Oct. 13, 2022).

Whether the Administrative Law Judge's decision is supported by substantial evidence when he did not properly consider the opinion of the treating physician.

Doc. 10, at 1.

**Evidence**

*1.    Personal and vocational evidence*

Schaefer was born in 1989 and was 30 years old on the alleged disability onset date. Tr. 24. She graduated from high school and previously worked as a hotel clerk, cleaner, and machine silkscreen printer. Tr. 45, 56.

*2.    Medical evidence*[3]

In February 2019, Schaefer saw her neurologist, Atanase Craciun, M.D., for a follow-up for numerous physical issues and anxiety. Tr. 596. Schaefer said that she "very occasionally" used Xanax. Tr. 596. Dr. Craciun wrote that Schaefer "remains stable" since her prior appointment in August 2018. Tr. 596. Schaefer's mental-status exam results were normal. Tr. 596. Dr. Craciun assessed "anxiety state" and other physical conditions. Tr. 596.

In August 2019, Schaefer had an initial assessment at Centerpoint Counseling. Tr. 687. Schaefer reported "multiple health problems." Tr. 687. She told the therapist that she "lost a sense of self" and could "barely leave the house due to her health issues." Tr. 687. Upon exam, Schaefer was cooperative

---

[3]    The recitation of medical evidence is not intended to be exhaustive and is limited to the evidence cited in the parties' briefs. Schaefer only challenges the ALJ's decision as to her mental impairments, so I only cite the medical evidence corresponding to those impairments.

and friendly and had normal speech. Tr. 688. Schaefer's appearance, attitude, and behavior were "average." Tr. 688. Schaefer had a dysphoric[4] mood and an appropriate affect. Tr. 688. She was oriented, her memory was "ok," and her judgment was fair. Tr. 689. Schaefer reported symptoms of anxiety, sadness, and worry. Tr. 690. Schaefer said that her main problem was anxiety from "a great deal of physical problems." Tr. 691. Schaefer's goal was to reduce stress as soon as possible. Tr. 691. The therapist diagnosed Schaefer with generalized anxiety disorder. Tr. 692.

In October 2019, Schaefer told the therapist that she did most of the chores at home and enjoyed living with her aunt and uncle. Tr. 686. In November 2019, Schaefer said that her aunt and uncle paid her to clean their house. Tr. 685.

In March 2020, Schaefer had an appointment with her allergist. Tr. 1080. The allergist described Schaefer as alert and oriented with "no mood disorders" and a calm affect. Tr. 1082. The next day, Schaefer saw Dr. Craciun for a follow-up. Tr. 1078. Schaefer said she was taking Xanax as needed. Tr. 1078. Schaefer's mental status exam was normal. Tr. 1078.

The next week, Schaefer saw Herschel Pickholtz, Ed.D., for a consultative exam. Tr. 787-796. Schaefer drove herself to the appointment and arrived on time. Tr. 788. Schaefer said that she couldn't work because of

---

[4]    Dysphoria is a state of "disquiet; restlessness; malaise." Dorland's Illustrated Medical Dictionary 579 (32d ed. 2012).

agoraphobia, anxiety, and postural orthostatic tachycardia and Ehler-Danlos syndromes. Tr. 788. Schaefer said that she was raising her 7-year-old daughter and the two of them lived with Schaefer's aunt and uncle. Tr. 788. Schaefer reported sleeping for 7.5 hours a night and napping about 4 times a week. Tr. 789. In the past, Schaefer thought of suicide and attempted suicide "5 times or more" by overdosing on medications. Tr. 789. She was never hospitalized for psychiatric reasons. Tr. 789. Schaefer said that she had mild mood swings and moderate to severe anxiety. Tr.789-790, 792. She was afraid of interacting with people and fearful of police officers. Tr. 789.

Dr. Pickholtz commented that Schaefer had an appropriate appearance. Tr. 791. Dr. Pickholtz found that Schaefer's capacity for associative thinking and cognitive functioning was average. Tr. 791. Schaefer's overall affect was constricted and her mood "appeared to be slightly to somewhat depressed." Tr. 792. Schaefer's facial expressions "appeared to be a little bit constricted" but she "smile[d] on several occasions and did not shed any tears." Tr. 792. Schaefer told Dr. Pickholtz that she experienced mild depression twice a week lasting for 12 hours and that her medications helped. Tr. 792. Dr. Pickholtz observed that Schaefer showed mild signs of anxiety and that she occasionally shook her leg. Tr. 792. Schaefer described her anxiety symptoms as nausea, chest pain, and "sometimes fe[eling] panicky." Tr. 792.

Schaefer detailed her daily activities. Every day, Schaefer "takes care of her hygiene" and does chores. Tr. 793. She is on the internet for 8 hours a day

(Google and Facebook), watches Netflix, and checks emails. Tr. 793. Schaefer talks to her doctors and relatives by telephone. Tr. 793. She watches television and plays video games, board games, and cards once a week. Tr. 793. Schaefer gets her daughter ready for school in the morning and checks her daughter's homework in the evening. Tr. 793. Schaefer said that her ability to understand and remember television shows and written material was mildly impaired. Tr. 793.

Dr. Pickholtz summarized his conclusions. Dr. Pickholtz characterized Schaefer's mental health symptoms as mild to moderate. Tr. 794. He diagnosed Schaefer with an "[u]nspecified bipolar disorder, predominantly depressed, with mild psychotic features in partial remission" and an unspecified anxiety disorder, both "currently mild to moderate." Tr. 794-795. Dr. Pickholtz found that that Schaefer can carry out, understand, and remember instructions for simple work activities. Tr. 795. Schaefer's pace during the evaluation was "a little bit slow at times" and "fell within the low average range," but she could perform 1- to 2-step tasks. Tr. 789, 795. Schaefer had "somewhat of an impairment" interacting with others and handling the stress and pressure of a work setting. Tr. 795.

In July 2020, Rajeet Shrestha, M.D., completed an assessment on Schaefer's behalf. Tr. 799-804. Dr. Shrestha stated that he had treated Schaefer every 2 to 3 months since May 2018. Tr. 799. Dr. Shrestha listed Schaefer's diagnoses—anxiety disorder, bipolar disorder, borderline

6

personality disorder, and other physical conditions. Tr. 799. Schaefer's symptoms were an anxious mood, an anxious and constricted affect, and suicidal ideations. Tr. 799. Dr. Shrestha listed Schaefer's medications and wrote that she didn't experience side effects that had "implications for working." Tr. 799. Schaefer's prognosis was guarded. Tr. 799. Dr. Shrestha checked boxes on a form indicating that Schaefer also had the following symptoms: decreased energy; blunt, flat, or inappropriate affect; generalized persistent anxiety; mood disturbance; difficulty thinking or concentrating; and sleep disturbance. Tr. 800. Dr. Shrestha opined that Schaefer was "seriously limited" in her ability to sustain an ordinary routine without special supervision and to make simple work-related decisions. Tr. 801. Dr. Shrestha wrote that Schaefer was "unable to meet competitive standards" in her ability to remember work-like procedures, maintain attention for 2-hour segments, maintain regular attendance, work in coordination with or proximity to others, perform at a consistent pace, accept instructions and respond appropriately to criticism from supervisors, and get along with coworkers or peers. Tr. 802. Schaefer was unable to cope with normal work stress and would miss more than 4 days of work per month. Tr. 802-803. Schaefer was not a "malingerer" and her impairments were "reasonably consistent with the symptoms and functional limitations" that Dr. Shrestha described. Tr. 803.

In September 2020, Schaefer saw Dr. Shrestha. Tr. 1224-1228. Dr. Shrestha referenced Schaefer's "fairly complicated psychiatric history" and

7

listed her relevant diagnoses of bipolar disorder, borderline personality disorder, social anxiety, post-traumatic stress disorder, and agoraphobia. Tr. 1224. Dr. Shrestha wrote that "pharmaceutical options were limited due to the condition of prolong Q2" and sensitivity to side effects. Tr. 1224.  He wrote that Schaefer had chronic suicidal ideation but no intent or plan. Tr. 1224. Schaefer reported that she was tired; she slept less at night and had difficulty staying awake during the day. Tr. 1225. Schaefer told Dr. Shrestha that her mood was more stable since her last visit and she hadn't increased her Lamictal dosage because she felt that her mood was manageable. Tr. 1224. Schaefer's mental status exam showed fair grooming and hygiene, cooperative behavior, organized thoughts, fair insight and judgment, and intact attention and memory. Tr. 1228. Dr. Shrestha advised Schaefer to continue to limit her Xanax to no more than 30 pills a month and to follow up in 2-3 months. Tr. 1224, 1225.

In October 2020, Schaefer saw one of her doctors and had a cooperative attitude and normal affect. Tr. 1270.

Therapy notes from Centerpoint Counseling in December 2020 describe Schaefer's progress as "good." Tr. 1461.

In January 2021, Schaefer had a video appointment with Dr. Shrestha. Tr. 1506. Dr. Shrestha advised Schaefer to continue taking Lamictal and Trileptal, continue psychotherapy, and talk to her therapist about cognitive behavioral therapy to address her fear of going outside. Tr. 1506-1507.

8

Schaefer said that Xanax helped her "get out of the door" but she still felt sick to her stomach. Tr.1508. Schaefer stated that her neurologist advised her that those symptoms may also be from Schaefer's postural orthostatic tachycardia syndrome. Tr. 1508. Schaefer's mental status exam showed fair grooming and hygiene, cooperative behavior, normal speech, and organized thoughts. Tr. 1511. Schaefer described her mood as "meh" and her affect was constricted. Tr. 1511. She had fair memory, intact concentration, and fair insight and judgment. Tr. 1511. Schaefer reported chronic intermittent suicidal ideation but no intent or plan.  Tr. 1511.

    3.    *Function Report*

    In March 2020, Schaefer completed a Function Report. Tr. 219-226. Schaefer wrote that she has trouble maintaining relationships. Tr. 219. She has social phobia, can't be around large groups of people, and is afraid to talk to people. Tr. 219. She has panic attacks and agoraphobia and "barely leave[s] the house." Tr. 219.

4.    *State agency opinions*[5]

In April 2020, Aracelis Rivera, Psy.D., reviewed Schaefer's record. Regarding Schaefer's mental residual functional capacity (RFC),[6] Dr. Rivera adopted an ALJ's RFC finding in connection with Schaefer's prior disability application. Tr. 102. That RFC assessment found that Schaefer can perform unskilled work free of fast-paced production requirements and with only routine workplace changes. Tr. 102. Schaefer can have occasional contact with the public and occasional interaction with coworkers and supervisors. Tr. 102. Schaefer's contact with others must be superficial, meaning no tasks involving arbitration, negotiation, confrontation, directing the work of others, persuading others, or being responsible for the safety and welfare of others. Tr. 102.

In August 2020, Deryck Richardson, Ph.D., reviewed Schaefer's record and adopted Dr. Rivera's opinion. Tr. 112.

---

[5]    When a claimant applies for disability benefits, the State Agency creates a record. The record includes the claimant's medical evidence. A State Agency disability examiner and a State Agency physician or psychologist review the claimant's record and determine whether and to what extent the claimant's condition affects his or her ability to work. If the State Agency denies the claimant's application, the claimant can ask for reconsideration. On reconsideration, the State Agency updates the record and a second disability examiner and doctor review the file and make a new determination. *See, e.g.*, 20 C.F.R. § 404.1615.

[6]    An RFC is an "'assessment of'" a claimant's ability to work, taking his or her "limitations … into account." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002) (quoting 20 C.F.R. § 416.945). Essentially, it's the SSA's "description of what the claimant 'can and cannot do.'" *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 631 (6th Cir. 2004) (quoting *Howard*, 276 F.3d at 239).

5.    *Hearing testimony*

Schaefer, who was represented by counsel, testified at the telephonic administrative hearing held in January 2021. Schaefer stated that she and her 8-year-old daughter lived with Schaefer's aunt and uncle. Tr. 44. Schaefer can and does drive short distances. Tr. 44. Schaefer's daughter attended school virtually, so Schaefer helped "keep [her] on track" with school during the day. Tr. 44. Schaefer also "tr[ies] to do a little cleaning." Tr. 44. Schaefer has "lots of doctor's appointments." Tr. 44. She has problems sleeping and usually took a nap every day for 2-4 hours. Tr. 44.

When asked how her conditions interfere with her ability to work, Schaefer said that she has back pain, joint pain, and chest pain. Tr. 45. She has a lot of stomach issues. Tr. 45. When asked how her anxiety affects her, Schaefer stated that she's always had anxiety. Tr. 46-47. "It's gotten to the point where it's really hard to leave the house." Tr. 47. Schaefer's chest gets tight and she feels nauseous. Tr. 47. She has postural orthostatic tachycardia syndrome, and "it's possible the increased anxiety could be from that." Tr. 47. Schaefer's temperature fluctuates and "when it does swing a lot" she worries she's becoming sick and that triggers her anxiety. Tr. 47.

Schaefer stated that she has panic attacks. Tr. 54. They start about an hour before Schaefer leaves the house and worsen when she is driving. Tr. 54. Schaefer leaves her house less frequently than she did in 2018. Tr. 54. Also, Schaefer estimated that her aunt helps her with more things now than in

11

2018—Schaefer's aunt does more housework, cooking, and grocery shopping. Tr. 55.

The ALJ discussed with the vocational expert Schaefer's past relevant work as a hotel clerk, industrial cleaner, and machine silkscreen printer. Tr. 56. The ALJ asked the vocational expert to determine whether a hypothetical individual with the same age, education, and work experience as Schaefer could perform her past work or any other work if the individual had the limitations assessed in the ALJ's RFC determination, described below. Tr. 57. The vocational expert answered that such an individual could perform Schaefer's past work of industrial cleaner and also the following representative jobs in the economy: marker, routing clerk, collator operator. Tr. 56-58. Schaefer's attorney asked the vocational expert if the individual described above could perform work if she were absent at least 3 days a month, and the vocational expert said no. Tr. 59-60.

### The ALJ's Decision

The ALJ made the following findings of fact and conclusions of law:

1. The claimant has not engaged in substantial gainful activity since November 21, 2019, the application date (20 CFR 416.971 *et seq*.).

2. The claimant has the following severe impairments: positional orthostatic tachycardia syndrome, long QT syndrome status post ICD placement, hypertensive cardiovascular disease, mild persistent asthma, fibromyalgia, depressive disorder, anxiety disorder, and obesity (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the

listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she can never climb ladders, ropes, or scaffolds. She can frequently balance. She can occasionally stoop, kneel, crouch, and climb ramps and stairs. The claimant can never crawl. She can frequently handle and finger objects bilaterally. She can have occasional exposure to extreme heat and cold, wetness, humidity, and pulmonary irritants such as fumes, dust, gases, odors, and poor ventilation. She must avoid the use of moving machinery, commercial driving, and unprotected heights. The claimant can perform simple, routine, and repetitive tasks that can be performed at the SVP 1-2 level. The work environment must be free of fast-paced production requirements and involve only routine workplace changes. She can [have] occasional public contact. She can have occasional interaction with co-workers and supervisors. The claimant can have superficial contact with others, defined as no tasks involving arbitration, negotiation, confrontation, directing the work of others, persuading others, or being responsible for the safety or welfare of others.

5. The claimant is unable to perform any past relevant work (20 CFR 416.965).

6. The claimant was born [i]n 1989 and was 30 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7. The claimant has at least a high school education (20 CFR 416.964).

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since November 21, 2019, the date the application was filed (20 CFR 416.920(g)).

Tr. 15–25.

**Standard for Disability**

Eligibility for social security benefit payments depends on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); *see also* § 1382c(a)(3)(A).

An ALJ is required to follow a five-step sequential analysis to make a disability determination:

1. Is the claimant engaged in substantial gainful activity? If so, the claimant is not disabled.

2. Does the claimant have a medically determinable impairment, or a combination of impairments, that is "severe"? If not, the claimant is not disabled.

3. Does the claimant's impairment meet or equal one of the listed impairments and meet the duration requirement? If so, the claimant is disabled. If not, the ALJ proceeds to the next step.

4. What is the claimant's residual functional capacity and can the claimant perform past relevant work? If so, the claimant is not disabled. If not, the ALJ proceeds to the next step.

14

5.    Can the claimant do any other work considering the claimant's residual functional capacity, age, education, and work experience? If so, the claimant is not disabled. If not, the claimant is disabled.

20 C.F.R. §§ 404.1520, 416.920. Under this sequential analysis, the claimant has the burden of proof at steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the vocational factors to perform available work in the national economy. *Id.* If a claimant satisfies each element of the analysis and meets the duration requirements, the claimant is determined to be disabled. *Id.*

**Standard of review**

A reviewing court must affirm the Commissioner's conclusions unless it determines "that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters*, 127 F.3d at 528. "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992) (quoting *Brainard v. Sec'y of Health & Human Servs.,* 889 F.2d 679, 681 (6th Cir. 1989)). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (quoting 42 U.S.C. § 405(g)).

A court may not try the case de novo, resolve conflicts in evidence, or decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if substantial evidence or a preponderance of the evidence supports a claimant's position, a reviewing court cannot overturn the Commissioner's decision "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). This is so because there is a "zone of choice" within which the Commissioner can act, without fear of court interference. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

**Discussion**

Schaefer challenges the ALJ's evaluation of Dr. Shrestha's July 2020 opinion.[7] Doc. 10, at 12. Schaefer argues that the ALJ didn't discuss "any of the[] factors" in 20 C.F.R. § 416.920c.[8] Doc. 10, at 12-13.

The Commissioner is required to evaluate the persuasiveness of all medical opinions using the following factors: supportability; consistency;

---

[7]    Schaefer asserts that Dr. Shrestha is her "treating physician." The "treating source rule," which generally required the ALJ to defer to the opinions of *treating physicians*, *see* 20 C.F.R. § 404.1527(c)(2) (2016), was abrogated by 20 C.F.R. §§ 404.1520c and 416.920c for applications, like Schaefer's, that were filed on or after March 27, 2017.

[8]    In their briefs, the parties cite 20 C.F.R. Part 404, which is for Disability Insurance Benefits under Title 2 of the Social Security Act, rather than Part 416, which is for Supplemental Security Income under Title 16 of the Social Security Act. The regulations are identical. Because Schaefer's application is for Supplemental Security Income, I cite the regulations in Part 416.

treatment relationship, including the length, frequency, purpose, and extent; specialization; and other factors. 20 C.F.R. §§ 416.920c(a), 416.920c(c)(1)-(5). *Supportability* and *consistency* are the most important factors. § 416.920c(a). The Commissioner must explain the *supportability* and *consistency* factors when discussing a medical opinion. § 416.920c(b)(2). The Commissioner is not required to discuss the remaining factors. *Id.* "A reviewing court evaluates whether the ALJ properly considered the factors as set forth in the regulations to determine the persuasiveness of a medical opinion." *Toennies v. Comm'r of Soc. Sec.*, 2020 WL 2841379, at *14 (N.D. Ohio June 1, 2020) (internal quotation marks and citation omitted).

Because the Commissioner is not required to discuss the factors in 20 C.F.R. § 416.920c(c)(3) through (c)(5)—the treatment relationship, specialization, and other factors—the ALJ didn't err when he didn't discuss those factors in his decision. 20 C.F.R. § 416.920c(b)(2).

The ALJ considered Dr. Shrestha's opinion:

> Shrestha Rajeet, M.D. stated that the claimant had numerous mental symptoms and she was unable to meet competitive standards in various areas, including remembering work procedures, maintaining attention for two hours, maintaining regular attendance, working with others, accepting instructions appropriately, coping with stress, and interacting appropriately with the public (D11F/3, 4). Dr. Rajeet concluded that the claimant would miss work more than four days per month (D11F/5). I find Dr. Rajeet's opinion unpersuasive. The record failed to document the extreme degree of limitations that Dr. Rajeet described. While she had periodic mental symptoms, the treatment notes did not establish such severe restrictions. Rather, Dr. Rajeet's own treatment notes documented relatively normal mental status findings.

Tr. 23.

17

Schaefer argues, "In terms of supportability and consistency, [Schaefer] has consistently reported the same symptoms, and resulting limitations to various physicians, to the agency and in testimony at her hearing." Doc. 10, at 13, 15. But the ALJ considered Schaefer's reports of symptoms and limitations. Tr. 23. The ALJ found that Schaefer's reports were only partially consistent with the record evidence. Tr. 23. Schaefer does not challenge that portion of the ALJ's decision. So Schaefer's reports of symptoms are not evidence disproving the ALJ's findings about Dr. Shrestha's opinion. *See also Jones*, 336 F.3d at 476 ("[A]n ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability") (citing *Walters*, 127 F.3d at 531).

Next, Schaefer cites a September 2020 treatment note from Dr. Shrestha listing Schaefer's diagnoses. Doc. 10, at 13.[9] But "[t]he mere diagnosis of [an impairment] … says nothing about the severity of the condition." *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988). Schaefer cites her reports of symptoms to Dr. Shrestha at a January 2021 visit but, again, Schaefer's reports of symptoms are not exam findings. Schaefer does not dispute the ALJ's characterization of her exam findings during visits with Dr. Shrestha as showing "relatively normal mental status findings." Tr. 25. So Schaefer has not shown that the ALJ's reasoning is unsubstantiated.

---

[9]      Dr. Shrestha's treatment notes postdate Dr. Shrestha's opinion.

18

Schaefer writes, "Records from Centerpoint Counseling further show that [Schaefer] could barely leave the house due to her health issues." Doc. 10, at 14 (citing Tr. 687). But that record, an initial assessment from August 2019, shows that Schaefer *reported* that she "can barely leave the house due to her health issues." Tr. 687. As the ALJ observed, Schaefer attended numerous doctor visits despite her reported problems leaving the house, Tr. 23—a finding that Schaefer does not challenge.

Schaefer cites her exam findings at her Centerpoint Counseling visit. Schaefer writes that her mood was dysphoric, her judgment was fair, and she had anxiety, sadness, and worry. Doc. 10, at 14. But Schaefer was also cooperative and friendly, and she had an appropriate affect; average appearance, attitude, and behavior; normal speech; unimpaired attention; "ok" memory; no suicidal ideation; insight into her problems; and no noted behavioral, somatic, thought, or memory issues. Tr. 689-690. Schaefer does not show that her Centerpoint Counseling exam findings undercut the ALJ's evaluation of Dr. Shrestha's opinion.

Finally, Schaefer argues that consultative examiner Dr. Pickholtz "confirmed that [Schaefer] stated her agoraphobia [and] anxiety were causing her significant symptoms." Doc. 10, at 14. Schaefer's argument fails for the same reason explained above—the ALJ found that Schaefer's reports of symptoms and limitations were not entirely consistent with the record. Schaefer does not challenge that finding. And despite Schaefer's reports of

19

symptoms, Dr. Pickholtz described Schaefer's symptom severity as "mild to moderate." Tr. 794. Also, Dr. Pickholtz found that Schaefer's abilities to understand, remember, and carry out instructions "really do not suggest any impairment" for "simple work." Tr. 795. Dr. Pickholtz found that Schaefer's abilities to maintain attention, concentration, and pace "really do not reflect any impairment" for "1 to 2-step tasks" and "a slight impairment at worst" to perform 3- to 4-step tasks. Tr. 795. Dr. Pickholtz found that Schaefer had "somewhat of an impairment" interacting with others and a "somewhat impaired [ability] at worst" to respond to work pressures in a work setting.[10] Tr. 795-796. In other words, even Dr. Pickholtz's opinion doesn't support the extreme limitations in Dr. Shrestha's opinion.

Schaefer raised only one issue in her brief. She argued that the ALJ's evaluation of Dr. Shrestha's opinion was improper. Schaefer did not challenge the ALJ's evaluation of her reports of symptoms. The ALJ explained that "the record failed to document the extreme degree of limitations that Dr. [Shrestha] described" and that Dr. Shrestha's "own treatment notes documented relatively normal mental status findings." Tr. 23. So the ALJ "articulate[d]" how he considered the *consistency* and *supportability* factors that he was required to discuss. 20 C.F.R. § 416.920c(a), (b)(2). Schaefer has not shown that

---

[10]     Dr. Pickholtz also wrote, "[Schaefer] stated herself [that] if it weren't for her physical problems she'd probably be working at least on a part-time basis." Tr. 796.

the ALJ's explanation was unsupported by the evidence. The ALJ's decision should be affirmed.

### Conclusion

For the reasons explained above, I recommend that the Court affirm the Commissioner's decision.

Dated: October 14, 2022

 /s/ James E. Grimes Jr.
James E. Grimes Jr.
U.S. Magistrate Judge

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F.3d 520, 530-531 (6th Cir. 2019).